UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL SALDANA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL SAYRE, et al.,<br><br>　　　　Defendants. | Case No. 11-cv-03921-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS** |

## INTRODUCTION

Plaintiff Samuel Saldana is a state prisoner proceeding pro se in this civil rights action brought under 42 U.S.C. § 1983, in which he alleges that defendants, employees of Pelican Bay State Prison, were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Defendants move for summary judgment and to dismiss. (Docket No. 24.) For the reasons stated herein, defendants' motions are GRANTED.

## BACKGROUND

The facts of this case are undisputed unless noted otherwise. In late August or early September of 2008, Saldana sustained injuries to his upper back, exacerbating existing lower back injuries when he fell from the top bunk of his bed onto the concrete floor below. (Am. Compl. ¶¶ 10–13.) Throughout 2008 and 2009, Saldana was treated by Pelican Bay medical staff for his injury. X-rays taken in December 2008 of Saldana's

1    cervical and lumbar spines were normal and failed to reveal the source of Saldana's pain.
2    (Defs.' Mot. to Dismiss and Mot. for Summ. J. ("MSJ"), Williams Decl. ¶ 3, Ex. A.)
3    Nevertheless, in response to Saldana's reports of pain, Pelican Bay's medical staff
4    prescribed various muscle relaxants and pain medications. (Am. Compl. ¶¶ 14–20; MSJ,
5    Williams Decl., Ex. D.)

6         In late 2008 or early 2010 defendant Claire Williams, Saldana's primary care
7    physician, began treating Saldana for back pain. (Am. Compl. ¶ 17, MSJ, Williams Decl.
8    ¶ 3.) On January 8, 2010, Williams examined Saldana who complained of pain in his
9    lower back that radiated to his right hip. (MSJ, Williams Decl. ¶ 4, Ex. E.) Williams
10   diagnosed Saldana with chronic lower back pain, prescribed him Naprosyn for pain
11   management and provided him with information regarding back care exercises and
12   techniques to help alleviate pain. (*Id.*)

13        Saldana continued to experience severe back pain and muscle spasms and returned
14   to Williams for treatment on June 3, 2010. (*Id.* ¶ 5.) Williams informed Saldana that he
15   could not determine the source of Saldana's pain and would not refer him to an outside
16   specialist. (Am. Compl. ¶¶ 26–27.) Williams ordered additional x-rays of Saldana's back
17   which once again failed to reveal the source of his pain. (MSJ, Williams Decl. ¶ 6.) He
18   renewed Saldana's pain medication prescriptions and informed Saldana that no follow-up
19   visits were necessary. (*Id.* ¶¶ 5–6.)

20        By September 2010 Saldana's pain had become so severe that it was difficult for
21   him to perform necessary daily activities. (Am. Compl. ¶ 33.) Williams prescribed
22   Indomethacin, an anti-inflammatory to reduce pain and swelling, for Saldana and ordered a
23   third set of x-rays, which were also objectively normal. (MSJ, Williams Decl. ¶ 8, Ex. C.)

24        On June 1, 2011, Saldana was treated by Nnenna Ikegbu, who replaced Williams as
25   his primary care physician. (Am. Compl. ¶ 42; MSJ, Ikegbu Decl. ¶ 5, Ex. C.) Saldana
26   once again complained that his current pain medication was ineffective, but Ikegbu
27   concluded that the Ibuprofen and back exercises were sufficient and ordered Saldana to
28   continue his current pain management regiment. (MSJ, Ikegbu Decl. ¶ 5, Ex. C.) Saldana

returned to Ikegbu on August 18, 2011, who concluded that the Ibuprofen was no longer effectively addressing Saldana's back pain. Ikegbu instead provided Saldana prescriptions for Methocarbomol, a muscle relaxant, and Salsalate, for pain and inflammation reduction. (*Id.* at ¶ 6, Ex. D.) Saldana states that these medications were also ineffective. (Am. Compl. ¶¶ 45–46.)

On October 10, 2011 Saldana was once more treated by Ikegbu, who could not find an objective cause for his radiating upper and lower back pain. (MSJ, Ikegbu Decl. ¶ 7, Ex. E.) Saldana contends that as a result of the inadequate care he received from Williams and Ikegbu, he is now experiencing secondary injuries in his knee and hip which greatly reduce his ability to perform basic daily functions. (Am. Compl. ¶ 48.)

Saldana states that at one of his visits with Williams, the doctor informed him that he would not and could not prescribe Saldana stronger pain medication as doing so would get him in trouble with his supervisors, defendants Michael Sayre and Maureen McLean. (Am. Compl. ¶¶ 35–37.) He alleges that Williams gave other inmate–patients similar information regarding decreasing medical care in order to cut costs. (*Id.* ¶ 37, Ex. D, Cole Decl.) Saldana further alleges that a study was released showing that Pelican Bay was issuing above-average amounts of medication to its prisoner-patients compared to other prisons in the area, that Williams was blamed for the number of medications prescribed, and that Williams was threatened with termination if he did not lower his medication and treatment prescriptions. (*Id.* ¶¶ 38–39.) Finally, Saldana alleges that defendant Sayre issued a memorandum in 2008 or 2009 instructing all medical personnel to provide Pelican Bay inmate-patients with the minimum level of medical care. (*Id.* ¶¶ 39–40.)

Williams denies that he was ever "required by the management or staff members at Pelican Bay to deny inmates, including Saldana, necessary treatment to minimize treatment costs." (MSJ, Williams Decl. ¶11). So does Ikegbu. (Ikegbu Decl. ¶10.) No copy of the alleged study or memorandum has been provided to or filed with the Court.

In sum, Saldana alleges that defendants failed to adequately diagnose and treat his ongoing back pain in violation of his Eighth Amendment rights. Saldana further

3

1    alleges claims of negligence, infliction of emotional distress and medical malpractice
2    against defendants.

## STANDARD OF REVIEW

4    Summary judgment is proper where the pleadings, discovery and affidavits
5    demonstrate that there is "there is no genuine dispute as to any material fact and [that] the
6    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts
7    are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477
8    U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient
9    evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

10   The party moving for summary judgment bears the initial burden of identifying
11   those portions of the pleadings, discovery and affidavits which demonstrate the absence of
12   a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
13   Where the moving party will have the burden of proof on an issue at trial, it must
14   affirmatively demonstrate that no reasonable trier of fact could find other than for the
15   moving party. On an issue for which the opposing party by contrast will have the burden
16   of proof at trial, as is the case here, the moving party need only point out "that there is an
17   absence of evidence to support the nonmoving party's case." *Id.* at 325.

18   Once the moving party meets its initial burden, the nonmoving party must go
19   beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts
20   showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only
21   concerned with disputes over material facts and "[f]actual disputes that are irrelevant or
22   unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the
23   court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91
24   F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with
25   reasonable particularity, the evidence that precludes summary judgment. *Id.* If the
26   nonmoving party fails to make this showing, "the moving party is entitled to judgment as a
27   matter of law." *Celotex*, 477 U.S. at 323.

28

4

# DISCUSSION

## I. Motion for Summary Judgment

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical needs and the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U. S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to the plaintiff's health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058–60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner-patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

### A. Williams

Defendant Williams is entitled to summary judgment as a matter of law. The undisputed record shows that Saldana received appropriate and reasonably timely medical

5

1 treatment.

2 On January 8, 2010, Williams treated Saldana for an increase in his lower back pain with radiation to Saldana's right hip. Williams performed a thorough physical examination and found that Saldana had no complaints of numbness, weakness or loss of sphincter control. Based on these findings, Williams prescribed Saldana Naprosyn, gave him physical therapy exercises to address the injury and advised Saldana to come back if his symptoms worsened, changed or persisted. (MSJ, Williams Decl. ¶ 4, Ex. E.)

When Saldana's symptoms did not resolve he returned for treatment with Williams on June 3, 2010. Williams ordered follow-up x-rays of Saldana's back, prescribed Ibuprofen to Saldana and advised Saldana to follow up with him as needed. (*Id.* ¶ 6.) Based on his examination and the results of the x-ray, Williams concluded that he could not determine the exact source of Saldana's pain and follow-up visits were no longer needed.

Over the next year Williams prescribed Saldana a variety of muscle relaxants and pain medications to address Saldana's back pain and ordered a third x-ray of Saldana's back. These actions show that defendant Williams was aware of Saldana's condition and sought to treat it, rather than showing deliberate indifference.

Saldana alleges that Williams gave him inadequate medical treatment and failed to follow Pelican Bay protocols regarding ongoing pain management and muscular-skeletal disorders. Saldana argues that pursuant to these protocols he should have been given stronger pain medications and referrals to outside specialists. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin*, 662 F.2d at 1344. Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1058, 1059–60. In addition, "[a] prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *See Roberts v. Spalding*, 783 F.2d 867,

870 (9th Cir. 1986).

Saldana has offered no evidence to show that Pelican Bay had specific protocols in place regarding pain management or muscular-skeletal disorders, that such protocols would have applied to Saldana, or that they were not followed. Instead the record reflects that Williams tried numerous courses of treatment and diagnostic testing in order to ascertain the source of Saldana's pain including three x-rays, physical therapy exercises, and three different types of pain medication. That Saldana believes that his back pain could have been resolved by stronger pain medications or outside medical attention does not create a material dispute whether Williams acted with conscious disregard of an excessive risk to Saldana's health, particularly given that Williams continuously tried new diagnostic testing, medications and exercises in an attempt to resolve Saldana's pain.

Saldana contends that Williams was instructed by defendants Sayre and McLean to provide the bare minimum in medical care to prisoner-patients in an effort to reduce medical costs at Pelican Bay. As proof, Saldana offers the declaration of his fellow inmate Robert Cole, who asserts that he was told by Williams and two other medical personnel at Pelican Bay that prescriptions were being curtailed or eliminated for cost reasons. (Cole Decl., ¶¶ 4, 10 and 11.) Doctors Williams and Ikegbu, on the other hand, deny that they were ever required not to provide necessary treatment to inmates. (Williams Decl. ¶ 11; Ikegbu Decl. ¶ 10.)

The statements of Cole, Williams and Ikegbu do not necessarily conflict. Consistent with the duty to provide constitutionally adequate medical treatment, physicians and medical personnel are entitled to achieve that result in a cost-effective way. The issue here is whether defendants were deliberately indifferent to Saldana's needs, and the evidence discussed above shows that they were not. Saldana fails to establish the existence of a conspiracy to limit costs by providing nominal and constitutionally inadequate treatment, and further fails to establish that if such a conspiracy existed it applied in any way to the treatment he received from Williams. Saldana has failed to show that there is a genuine dispute as to any material fact. The motion for summary judgment

as to Williams is GRANTED.

### B. Ikegbu

Defendant Ikegbu is also entitled to summary judgment. Saldana alleges that Ikegbu refused to provide Saldana with effective treatment to address his pain. (Am. Compl. ¶¶ 45–47.) However, Ikegbu provided Saldana with anti-inflammatory medication, a muscle relaxant, and extensive advice regarding physical therapy and stretching. (MSJ, Ikegbu Decl. ¶¶ 5–7.) Ikegbu's actions were reasonable, especially given that even after numerous tests and examinations, Saldana was never found to have an objectively serious back condition.

There is consensus in the medical community "that the only treatments that have a positive impact for back pain are general exercise, stretching, occasional pain medications. . . and infrequent muscle relaxants for short bursts." (*Id.* at ¶ 9.) Ikegbu's treatment of Saldana's back pain included all of the objectively reasonable and standard medical treatments. The undisputed record shows that Saldana received appropriate and reasonably timely medical treatment. Saldana has therefore failed to show that there is a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, the motion for summary judgment as to Ikegbu is GRANTED.

### C. Michael Sayre

Saldana's allegations against defendant Sayre, who never treated the Saldana, are based on Sayre's status as Williams's supervisor. As Saldana has not shown that Williams violated his Eighth Amendment rights, his claim against Sayre necessarily fails. Accordingly, the motion for summary judgment as to Sayre is GRANTED.

### D. Maureen McLean

Saldana's allegations against McLean rest on the same theory as those against Sayre; that is, that McLean is Williams's supervisor. As Saldana has not shown that Williams violated his Eighth Amendment rights, his claims against McLean necessarily fail. Accordingly, the motion for summary judgment as to McLean is GRANTED.

## II. Motion to Dismiss

The federal claims having been disposed of, the Court declines to exercise jurisdiction over Saldana's state law claims. Accordingly, Saldana's state law claims are DISMISSED without prejudice to Saldana pursuing such claims in state court.

## CONCLUSION

Saldana has failed to show that there are triable issues of material fact as to any of his claims. Defendants' motion for summary judgment (Docket No. 24) is GRANTED as to all claims against defendants Claire Williams, Nnenna Ikegbu, Michael Sayre, and Maureen McLean. Defendants' motion to dismiss is GRANTED, and Saldana's state law claims are DISMISSED without prejudice. The Clerk shall enter judgment in favor of all defendants as to all claims, terminate Docket No. 24, and close the file.

**IT IS SO ORDERED.**

**Dated:** March 17, 2014

WILLIAM H. ORRICK
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAMUEL SALDANA,

        Plaintiff,

  v.

M SAYRE et al,

        Defendant.

Case Number: CV11-03921 WHO

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 17, 2014, I SERVED a true and correct copy of the attached, by placing said copies in a postage paid envelope addressed to the person hereinafter listed, by depositing said envelope in the U.S. Mail.

Samuel Saldana V-30056
Pelican Bay State Prison
D10-204
P.O. Box 7500
Crescent City, CA 95532

Dated: March 17, 2014

Richard W. Wieking, Clerk
By: Jean Davis, Deputy Clerk